O’MALLEY, Circuit Judge,
dissenting, with whom WALLACH, Circuit Judge, joins.
There is no doubt that § 1292(c)(2) is an exception to the final judgment rule that applies only to patent cases and, thus, expands the normal appellate jurisdiction of this, and only this, court of appeals. On this point, I agree with the majority. The question we address is whether the scope of that exception has the astounding breadth the majority affords it today. I do not believe that it does. Indeed, I believe the majority stretches that statutory provision beyond reasonable bounds, and well beyond anything Congress intended.
Congress created this court pursuant to its authority under Article III of the United States Constitution. Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25. As such, the scope of our jurisdiction is defined by Congress, as are the rules and procedures we are to follow. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (“ ‘Courts created by statute can have no jurisdiction but such as the statute confers.’ ” (quoting Sheldon v. Sill, 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850))). We may not expand that jurisdiction or differentiate ourselves from other Article III courts based *1330 on the subject matter of the cases before us, our own policy views of how best to resolve cases in those subject matter areas, or even the understandable docket-driven concerns of the tribunals from which our appeals arise. The Supreme Court repeatedly has reminded us that the unique nature of our subject matter jurisdiction does not justify our adoption of unique rules — whether procedural or substantive. See, e.g., Gunn v. Minton, — U.S. -, 133 S.Ct. 1059, 1064, 1068, 185 L.Ed.2d 72 (2013) (applying general principles of “arising under” and disagreeing with our jurisprudence holding that a state law malpractice claim involving patent disputes arises under federal patent law); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 122, 131, 132 n. 11, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (overturning a decision by this court pertaining to a declaratory judgment action by a patent licensee because the legal standards employed conflicted with general declaratory judgment jurisprudence); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393-94, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (rejecting this court’s attempt to develop a rule regarding the right to injunctive relief “unique to patent disputes,” holding that “the traditional four-factor framework ... governs the award of injunctive relief’).
Despite these reminders, the majority today once again concludes that matters before this court may be treated differently than civil litigation before every other court of appeals in the federal system. The majority claims that this time, it is authorized to endorse unique procedures for patent litigation coming from district courts— procedures that differ markedly from those employed in our sister circuits — because there is a statutory provision that expressly authorizes it to do so: 28 U.S.C. § 1292(c)(2). I disagree.
I dissent from both of the majority’s conclusions. I do not believe we are authorized to hear interlocutory appeals of liability judgments where a request for a jury trial on damages remains outstanding or a request for a finding of willful infringement has not yet been addressed. I believe this appeal should be dismissed because it is a non-final judgment over which we have no jurisdiction. I would remand the matter to the trial court pending further proceedings and entry of a final judgment.
I.
The final judgment rule imposes an important limitation on jurisdiction of all Article III courts of appeal. Under 28 U.S.C. § 1295(a)(1), except in very limited circumstances, this court has jurisdiction only over appeals “from a final decision of the district courts ... in any civil action arising under ... any Act of Congress relating to patents.” (emphasis added). The Supreme Court has characterized a final decision as one that “ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” Van Cauwenberghe v. Biard, 486 U.S. 517, 522, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). In Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Supreme Court explained that the “rule[] that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits[] serves a number of important purposes.” 449 U.S. at 374, 101 S.Ct. 669. According to the Court:
[The final judgment rule] emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the inde *1331 pendence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. The rule also serves the important purpose of promoting efficient judicial administration.
Id. (second alteration in original) (citations and internal quotation marks omitted). Thus, “[t]he finality requirement ... embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by .interlocutory appeals.” United States v. Nixon, 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).
In all other circuits and all other types of cases, the finality requirement plainly applies to outstanding damages determinations. See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees, 776 F.2d 1563, 1564 (2d Cir.1985) (per curiam) (“We have held that where attorneys’ fees are a contractually stipulated element of damages, a judgment is not final until the fees have been determined.”); Carolina Power & Light Co. v. Dynegy Mktg. & Trade, 415 F.3d 354, 358 (4th Cir.2005) (“[A] judgment on liability that does not fix damages is not a final judgment because the assessment of damages is part of the merits of the claim that must be determined.”); Deloach v. Delchamps, 897 F.2d 815, 826 (5th Cir.1990) (stating that “a judgment is not final until both liability and damages are determined”); Maristuen v. Nat’l States Ins. Co., 57 F.3d 673, 678 (8th Cir.1995) (“A judgment awarding damages but not deciding the amount of the damages or finding liability but not fixing the extent of the liability is not a final decision within the meaning of .§ 1291.”); Rekstad v. First Bank Sys., 238 F.3d 1259, 1262 (10th Cir.2001) (noting “the well-accepted rule that an order determining liability but leaving damages to be calculated is not final unless the correct amount of damages is self-evident and not likely to be the subject of future appeal”).
After a jury trial on the liability issues presented in this patent case, and attendant motion practice, the trial court entered judgment on those liability issues. Recognizing that its judgment was not final within the meaning of § 1295(a)(1) and a traditional understanding of the finality requirement, the trial court entered judgment pursuant to Federal Rule of Civil Procedure 54(b) and encouraged the parties to pursue an interlocutory appeal on the basis of that certification.[1]
Correctly contending that Rule 54(b) does not permit certification of judgments which fail to resolve all issues with respect to a claim or party, Bosch moved to dismiss its own appeal and Pylon’s cross appeal. Robert Bosch LLC v. Pylon Mfg. Corp., Nos. 2011-1363, -1364, Dkt. No. 24 (June 24, 2011). In denying that motion, *1332 the motions panel did not rely on Rule 54(b).[2] Robert Bosch LLC v. Pylon Mfg. Corp., 426 Fed.Appx. 912, 913 (Fed.Cir.2011) (citing 28 U.S.C. § 1292(c)(2) as the basis for denying Bosch’s motion to dismiss). Instead, in denying Bosch's motion to reconsider this court’s denial of Bosch’s motion to dismiss, we cited to our 1988 decision in In re Calmar, Inc., 854 F.2d 461, 464 (Fed.Cir.1988), for the proposition that 28 U.S.C. § 1292(c)(2) is a broad exception to the finality rule, allowing for interlocutory appeals in patent cases even where “a jury trial ... on the issues of damages and willfulness” remains pending. Robert Bosch LLC v. Pylon Mfg. Corp., 437 Fed.Appx. 947, 948 (Fed.Cir.2011).
Bosch continued to dispute our jurisdiction over this appeal despite the motions panel’s ruling, arguing to the merits panel that § 1292(c)(2) does not apply to jury trials on damages or willfulness determinations; Bosch contends that § 1292(c)(2) does not operate as the broad exception to the finality rule which either Calmar or the motions panel described. Because we have an obligation to assess our jurisdiction at all stages of proceedings before us, we agreed to consider the scope and import of §. 1292(c)(2) en banc.
II.
Section 1292(c)(2) grants this court jurisdiction over “an appeal from a judgment in a civil action for patent infringement which ... is final except for an accounting.” As an exception to the final judgment rule, § 1292(c)(2) is to be interpreted narrowly. See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867-68, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (stressing the importance of the final judgment rule and expressing concern when a narrow exception threatened to “swallow the general rule”); Coopers & Lybrand v. Livesay, 437 U.S. 463, 474, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (stating that “Congress carefully confined” the availability of immediate review of non-final orders); Cobbledick v. United States, 309 U.S. 323, 324-25, 60 S.Ct. 540, 84 L.Ed. 783 (1940) (“Finality as a condition of review ... was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all.” (footnotes omitted)).[3] Rather than interpreting § 1292(c)(2) narrowly, however, the majority grossly expands this court’s jurisdictional reach by adopting a broad definition of what constitutes an “accounting” under that rule. Because I believe the term “accounting” only applies to *1333 a limited class of proceedings before special masters or to those instances in which the trier of fact has decided all matters relevant to a damages determination save the application of those decisions to an undisputed set of numbers, I do not believe § 1292(c)(2) justifies the exercise of jurisdiction over this appeal.
As the majority concedes, our statutory analysis must begin “with ‘the assumption that the ordinary meaning of the language’ chosen by Congress ‘accurately expresses the legislative purpose.’ ” Microsoft Corp. v. i4i Ltd. P’ship, — U.S. -, 131 S.Ct. 2238, 2245, 180 L.Ed.2d 131 (2011) (quoting Engine Mfrs. Ass’n v. S. Coast Air Quality Mgmt. Dist., 541 U.S. 246, 252, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004)). When Congress “uses a common-law term in a statute, we assume the term ... comes with a common law meaning, absent anything pointing another way.” Id. (citations omitted). In discerning the boundaries of such a term, we must look to what was meant by the term at the time the statute was drafted. See, e.g., Neder v. United States, 527 U.S. 1, 21, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (“It is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.”) (citations omitted); Standard Oil Co. v. United States, 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911) (“[Wjhere words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.”) (citations omitted). Thus, what was meant by reference to an “accounting” at the time the exception codified in § 1292(c)(2) was originally enacted is critical to our inquiry.
The majority begins this inquiry by asking and answering the wrong question— whether an “accounting” as of 1927 only permitted consideration of an infringer’s profits or also allowed calculation of a pat-entee’s damages. While the majority’s discussion of this point is thorough and erudite, it is irrelevant. What we should ask is not what questions may be considered during the course of an “accounting” but whether the procedure that was an “accounting” as of 1927 — the one contemplated in § 1292(c)(2) — is the same as or encompasses a jury trial on any of those same questions.[4]
Turning then to what is really at issue here — whether the “accounting” Congress contemplated in § 1292(c)(2) is the same thing as a jury trial on damages — the majority cites “four points” in support of the conclusion that it is: (1) the fact that in 1948, Congress changed the predecessor to § 1292(c)(2) so as to allow for appellate jurisdiction in “civil actions” without deleting the reference to an “accounting”; (2) the majority’s belief that juries assessing damages must resolve “the same issues” special masters historically decided in ac-countings; (3) the majority’s belief that allowing appeal of judgments that are final except for a jury trial on damages promotes the same policies that prompted Congress to allow interlocutory appeal of judgments final except for an accounting in equity proceedings; and (4) a general reliance on stare decisis. See Maj. Op. at 1313-14. I find none of those points persuasive.
*1334 III.
I analyze the majority’s justifications for expanding the jurisdictional scope of § 1292(c)(2) in the order in which it reaches them.
A.
The majority’s only attempt at a statutory analysis to support its holding is its claim that, by substituting the phrase “civil actions” for “suit[s] in equity” in the jurisdictional grant of § 1292, Congress somehow intended to expand the concept of an accounting to include jury trials on damages. The disregard for the importance of the right to a jury trial and misunderstanding of what a jury trial entails which is evident in this proposition is stunning.
As the majority concedes, in 1927, “Congress gave the term ‘accounting’ its judicially settled meaning (i.e., proceedings before a special master to determine the infringer’s profits and the plaintiffs damages) when it enacted § 227a,” the predecessor to § 1292(c)(2). Maj. Op. at 1312. Section 227a expressly pertained only to “suit[s] in equity” — proceedings in which a jury trial on damages was unavailable. And, the accounting employed in those proceedings was one in which post-trial the exercise of applying the trial court’s findings to the sales of infringing products for purposes of calculating an award to the patent holder occurred. At no point after 1927 did Congress expressly expand the definition of accounting to include anything other than this original construct.
So how does a word with an admitted original meaning and scope morph from one thing into another? How does an equitable proceeding that contemplates a crunching of numbers post-trial now encompass the very different process of a jury trial on damages? The majority says that Congress dramatically revamped the concept of an accounting without ever actually saying so. Specifically, the majority concludes that, when Congress revised 28 U.S.C. § 1292 in 1948 to give courts of appeals jurisdiction over judgments in “civil actions for patent infringement which are final except for accounting,” Congress really meant to say that they were doing away with the concept of “accountings” contemplated in the 1927 Act and redefining the old word “accounting” to mean any procedure, including jury trials, in which any decision-maker either awarded or assessed any measure of damages in patent cases. I cannot take that leap of logic with my colleagues.
In 1927, a court hearing a case under the patent laws “according to the course and principles of courts of equity” was permitted, upon a finding of infringement, to allow the complainant to recover “in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby.” Patent Act of 1922, Pub.L. No. 67-147, ch. 58, § 8, 42 Stat. 389, 392; Patent Act of 1870, ch. 280, § 55, 16 Stat. 198, 206. Thus, in any bill of equity seeking relief from an in-fringer, a plaintiff was entitled to have a special master perform an accounting to calculate an infringer’s profits or a paten-tee’s own lost sales, to the extent provable. In 1946, 35 U.S.C. § 70 was amended to allow a patent holder to recover “general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefore, together with such costs, and interest, as may be fixed by the court.” 60 Stat. 778 (1946); see also 35 U.S.C. § 284 (2006). The Supreme Court has explained that the purpose of this statutory change largely was to eliminate the recovery of an infringer’s “profits” in most patent actions and to allow only for damages tied directly to the infringement. Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 505-06, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). The legislative history of the 1946 *1335 amendments suggests that the purpose of this change was to reduce the cost of accountings before special masters in courts of equity by eliminating the most complex aspects of the task special masters were asked to undertake post-trial. The Committee on Patents of the House of Representatives noted: ' ■
Frequently a suit for patent infringement involves the infringement of only an improvement in a complex machine, and it is impossible to apportion profits due to the improvement. In such circumstances the proceedings before masters, which are conducted in accordance with highly technical rules and are always expensive, are often protracted for decades and in many cases result in a complete failure of justice.
Although the bill would not preclude recovery of profits as an element of general damages, ... by making it unnecessary to have proceedings before masters and empowering equity courts to assess general damages irrespective of profits, the measure represents proposed legislation which in the judgment of the committee is long overdue.
H.R.Rep. No. 1587, 79th Cong., 2d Sess. 1 (Feb. 19, 1946);- see also 92 Cong. Rec. 9188 (1946) (statement of Sen. Pepper) (“Experience has proven that it is such a difficult accounting matter to determine what the profit of the alleged infringer has been that there is almost always an interminable delay in connection with the recovery sought. Consequently, the basis laid down by this bill is general compensatory damages which the plaintiff in suit sustains.”). Despite these changes in the remedies available for patent infringement, there is no indication that the meaning of the term “accounting” ever changed. Congress only was addressing those remedies which could be calculated post-trial in an equitable proceeding. It was not describing or redefining the nature of that proceeding.
In 1948, § 227a was recodified at 28 U.S.C. § 1292(a)(4) to reflect the 1938 merger of law and equity and the 1946 revision to the patent damages statute. In relevant part, the phrase “suit[s] in equity” was replaced with the phrase “civil actions.” H.R. Rep. 308, 80th Cong., 1st Sess., Alll (1948) (“In subsection (3), which is based on section 227a of title 28, U.S.C., 1940 ed., words ‘civil actions’ were substituted for ‘suits in equity’.... ”). The majority makes much of this substitution; in fact, it is the only reed upon which the majority attempts to support its statutory analysis. While the reference to “civil actions” in 1948 was necessary to make clear that appellate jurisdiction over patent actions was broad enough to cover actions which combined legal and equitable claims, there is nothing in the Act or its legislative history which indicates that the word “accounting” took on an entirely new meaning. As the majority acknowledges, “ac-countings” — as the term was used in 1927 (i.e., proceedings before a special master that could include the determination of damages) — continued to be available in civil actions following the merger of law and equity and continue to be available in limited circumstances today. Maj. Op. at 1315 n. 2. If the word “accounting” was really redefined in 1948, it means that the term both had to retain its original meaning and take on procedures that were not employed in patent cases in 1927.
Rather than alter the concept of an accounting to include a jury trial on damages, the merger of law and equity simply permitted both types of relief to be sought in a single action, while maintaining the essential character of each. See Kennedy v. Lakso Co., 414 F.2d 1249, 1251-52 (3d Cir.1969) (merger of actions into a single action under Rule 2 of the Federal Rules of Civil Procedure did not obliterate the distinction between them — actions at law can remain triable to a jury; actions in equity are not). The 1948 amendments to *1336 § 1292, rightly understood, simply clarified that the actions merged by the Federal Rules in 1938 were collectively appealable when final. In context, the continuing reference to an accounting in § 1292(c)(2) is simply a continuing recognition that actions in equity for infringement continued to the extent a patentee either chose to forgo a right to damages at law or the remedy at law was inadequate. See AMF Tuboscope, Inc. v. Cunningham, 352 F.2d 150, 153 (10th Cir.1965) (equitable and legal actions combined in single action, but equitable damage remedy must give way to legal one except where legal remedy is wholly inadequate).
In equating an accounting before a special master with a jury trial on damages— and concluding Congress did so as well— the majority not only mischaracterizes the import of the 1948 amendment to § 1292, it also ignores the distinction between juries and special masters as decision-makers, and ignores the distinctions between what each has the authority to decide. Indeed, the proposition that a jury trial on damages is different from an accounting should be uncontroversial.
The Supreme Court has rejected soundly the contention that an accounting by a special master is a mere substitute for a jury trial on damages. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Rule 38 of the Federal Rules of Civil Procedure provides, in pertinent part, that “[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution — or as provided by a federal statute — is preserved to the parties inviolate.” In Dairy Queen, a defendant charged with breach of contract and trademark infringement demanded a jury trial on liability and damages. Relying in part on the fact that the plaintiffs complaint also sought “an accounting of profits illegally obtained by the defendant,” the district court struck the defendant’s demand for a trial by jury. McCullough v. Dairy Queen, Inc., 194 F.Supp. 686, 687 (E.D.Pa.1961). The Third Circuit denied the defendant’s petition for mandamus to compel the district judge to vacate the order striking the demand for a jury trial, and the Supreme Court granted certiorari. Dairy Queen, 369 U.S. at 470, 82 S.Ct. 894. In reversing both the Third Circuit and the district court, the Supreme Court discounted the importance of the use of the word “accounting” in the plaintiffs prayer for relief, stating that “the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.” Id. at 477-78, 82 S.Ct. 894. According to the Court, to maintain a suit for an equitable accounting, “the plaintiff must be able to show that the ‘accounts between the parties’ are of such a ‘complicated nature’ that only a court of equity can satisfactorily unravel them.” Id. at 478, 82 S.Ct. 894. The Court then held that, “[i]n view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met.” Id. Finding that a jury “could readily determine the recovery, if any,” the Court concluded that the district court erred in refusing to grant the defendant’s demand for a trial by jury. Id. at 479, 82 S.Ct. 894.
Following the Supreme Court’s guidance in Dairy Queen, in 2009 the Tenth Circuit reversed a district court’s decision to appoint a special master to perform an accounting where the plaintiff requested a trial by jury on damages. Haynes Trane Serv. Agency v. Am. Std., Inc., 573 F.3d 947, 964 (10th Cir.2009). While the court in Haynes recognized that a narrow exception to the general entitlement to have a jury assess damages exists where there is *1337 no adequate remedy at law, it concluded the exception only applies in the rare situation where computational complexities mandate that a jury cannot adequately perform the task. Id. at 964-65. Because it found no support for “the view that a prolonged trial in itself provides an inadequate remedy at law,” and that “the damages issue cannot be separated from the merits of the liability claim,” the court remanded for a new trial on the entire actiom Id. at 965-67; see also AMF Tuboscope, 352 F.2d at 153; Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 491 (5th Cir.1961) (“It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control”).
If a district court violates the Seventh Amendment by ordering an accounting in the place of a jury trial on damages, how can a jury trial on damages literally be an “accounting” within the meaning of § 1292(c)(2)?[5]
In equating an accounting with a jury trial on damages, the majority also disregards the determinations which juries as fact-finders make in the context of a damages ássessment. In damages trials, juries determine the entitlement to damages, the nature of the damages recoverable (lost profits, reasonable royalty, convoyed sales, etc.), and the formula to be employed in determining the measure of those damages (the percentage of profits that represents a reasonable royalty; whether that percentage should be applied against the entire market value of the infringing product or some incremental portion thereof, etc.). To aid them in assessing the right to and appropriate measure of damages, we instruct the jury to consider a broad range of factors. Georgia-Pacific Corp. v. United States Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y.1970) (listing relevant considerations including “[t]he established profitability of the product made under the patent; its commercial success; and its- current popularity”; “[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results”; and “[t]he amount that a li-censor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement”). None of these decisions was made by special masters in suits in equity.
In suits in equity, a special master’s services were only invoked once the court determined that a patentee was entitled to a monetary remedy. Initially, the award only took the form of an infringer’s profits on infringing sales — which then were calculated without consideration of apportionment. See, e.g., Livingston v. Woodworth, 56 U.S. (15 How.) 546, 14 L.Ed. 809 (1853) *1338 (holding that damages cannot be awarded in an equity proceeding and any award was limited to an infringer’s profits). Later, when damages became a permissible consideration, the court would either instruct the special master which calculation to employ (profits or damages or some combination), and what formula to employ, including what percentage of sales would represent a reasonable royalty, or would consider recommendations from special masters as to those matters. Boesch v. Graff, 133 U.S. 697, 699, 10 S.Ct. 378, 33 L.Ed. 787 (1890) (“Exceptions were filed to [the special master’s] report [including damages of $2,970.50], and overruled, and a final decree entered in favor of Graff and Donnell ... from which decree this appeal has been prosecuted.” (emphasis added)); K.W. Ignition Co. v. Temco Electric Motor Co., 283 F. 873, 874 (6th Cir.1922) (stating that the special master recommended an award damages, a portion of which the district court overruled). At no point was the special master given the authority to make those final determinations, or to decide a patentee’s entitlement to any particular remedy. The right to have the court, the only trier of fact available then, make those determinations remained inviolate.
The fact that the jury was given the right to make these decisions in civil actions indicates that Congress equated juries with the court of equity, not with a special master whose only authority was to apply the findings given to him to a set of data. Thus, the fact that Congress failed to redefine the term accounting in 1948 is meaningful, but it is not meaningful in the way the majority believes. Rather than broaden the importance of an accounting in patent cases, Congress narrowed the circumstances in which § 1292(c) would justify disregard of the finality requirement to that narrow class of cases in which an equitable accounting might still be necessary — cases which the Supreme Court explained are both “exceptional” and “rare.” Dairy Queen, 369 U.S. at 478, 82 S.Ct. 894 (“In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met.”). I just cannot understand the majority’s conclusion to the contrary.[6]
*1339 B.
The majority’s next point in support of its ruling is its claim that, because the special master and :the jury decide the “same issues” when serving their respective functions, a modern damages trial rightly should be considered an accounting for purposes of § 1292(c)(2). Maj. Op. at 1816. I have already explained why I believe the majority’s fundamental premise is wrong — a special master is simply not in the same class of decision-maker as a jury and does not decide the same issues a jury is authorized to. decide. And, I have explained why I believe the majority’s point is irrelevant in any event because the inquiry we undertake should not be what questions a special master might be entitled to ask in an accounting, but what an accounting — the procedure itself — actually is.
On the latter point, it is notable that the majority does not contend, nor could it, that any common understanding of the term “accounting” would ever justify the' broad meaning it believes Congress ascribed to it. See The Oxford English Dictionary 87 (2d ed.1989) (defining “accounting” as “[t]he' action or process of reckoning, counting, or computing; numeration, computation, calculation”). This common understanding aligns directly with that used in the Federal Rules of Civil Procedure. For instance, Federal Rule of Civil Procedure 53(a)(l)(B)(ii) allows the appointment of a master to “hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if the appointment is warranted by[] the need to perform an accounting or resolve a difficult computation of damages.” (emphasis added). The 2003 Advisory Committee Notes further indicate that Rule 53(a)(l)(B)(ii) relates to “ministerial determinations that require mastery of much detailed information but that do not require extensive determinations of credibility.”
I see nothing about a jury trial on damages which can be characterized as the “same” as a special master’s role in an accounting other than the fact that both, at some point, involve calculations.
C.
The majority’s next point is its policy argument — that, since Congress passed § 1292(c)(2) to address the extraordinary expense involved in the process of an accounting, we should use § 1292(c)(2) to save parties from the expenses involved in damages trials. Putting aside the question of whether allowing interlocutory appeals in all patent cases would truly result in cost savings — a premise the finality rule itself soundly rejects — there is simply no comparison between the equitable account-ings of old and a modern jury trial on damages. Presenting a damages case may add to the length of a patent trial, but the added time is measured in hours and days, not the many years that prompted the exception for appeals of judgments that are ‘‘final except for an accounting.” See George P. Dike, The Trial of Patent Accountings in Open Court, 36 Harv. L.Rev. 33, 36 n.7 (1922) (describing the elaborate procedure employed when attempting to calculate an infringer’s profits and explaining that in a “typical case” “the proceedings before the master alone extended over five years”). The average patent trial, with a full damages presentation, lasts approximately 7 to 14 days, not the half a decade accounting procedures spanned.[7] *1340 See Timothy J. Malloy, 1 Size Doesn’t Fit All in Patent Trials, Law360 (October 28, 2010), http://www.law360.com/articles/ 203660/1-size-doesn-t-fit-all-in-patent-trials.
Even accepting the majority’s conclusion that the policies advanced by its result today align with those which prompted Congress to pass the predecessor to § 1292(c)(2) in 1927, it is not our role to expand what Congress did to address a very specific problem into an entirely different realm. See, e.g., Ebert v. Poston, 266 U.S. 548, 554, 45 S.Ct. 188, 69 L.Ed. 435 (1925) (“The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the legislature therein expressed. A casus omissus does not justify judicial legislation.... [C]are and particularity in treatment preclude expansion of the Act in order to include transactions supposed to be within its spirit, but which do not fall within any of its provisions.”) (internal citations omitted); Frank H. Easterbrook, Statutes’ Domains, 50 U. Chi. L.Rev. 533, 548 (1983) (“Judicial interpolation of legislative gaps would be questionable even if judges could ascertain with certainty how the legislature would have acted.... What each Congress does binds the future until another Congress acts, but what a Congress might have done, had it the time, is simply left unresolved. The unaddressed problem is handled by a new legislature with new instructions from the voters.”). Absent any indication to the contrary, we must assume that Congress contemplated an “accounting” when it used the term “accounting,” and we should not broaden that term’s definition to cover something as fundamentally different as a jury trial, no matter what policy reasons we might cite to justify such an expansion.
While I recognize that § 1292(c)(2) was expressly designed to provide an exception for patent cases, Congress has not indicated, nor do I believe that it is true, that a determination of damages in a patent case is so burdensome that it is to be treated differently than a determination of damages in every other kind of case. Rather, it is far more plausible that the exception in § 1292(c)(2) was enacted to address the unique burdens of a single onerous type of proceeding in a patent case — one that has been the focus of the exception since 1927 and is still today reserved for the “rare” case involving incredibly complicated determinations that a jury cannot be expected to handle alone. See Dairy Queen, 369 U.S. at 478, 82 S.Ct. 894; see also Fed. R.Civ.P. 53.
D.
The majority last points to the concept of stare decisis, which it says “weighs in favor of [its] holding.” Maj. Op. at 1316. It says that, since we have exercised jurisdiction over interlocutory appeals in the past, we should continue to do so until Congress tells us not to. While stare deci-sis is an important principle, it cannot serve as an excuse to continue, ad infini-tum, fundamentally incorrect legal conclusions. This is especially so, moreover, where the prior case law to which the majority points contains no reasoned basis for their holdings regarding the scope of § 1292(c)(2). Indeed, in many of those cases we exercised jurisdiction over the appeal before us without discussion or even citation to § 1292(c)(2). To the extent our prior cases do address the issue, they suffer from the same flaws which pervade the majority opinion today — the failure to distinguish adequately between an ac *1341 counting and a jury trial on damages. This en banc proceeding provides us with the opportunity and authority to revisit our prior case law and reasoning, and to correct the errors therein.
The only definitive statements of this court regarding our jurisdiction under § 1292(c)(2) pending a damages trial come from In re Calmar, Inc., 854 F.2d 461 (Fed.Cir.1988). It is this case upon which the motions panel relied and to which" the majority today says we must adhere. In Calmar, a petitioner sought a writ of mandamus directing the district court to vacate a sanctions order. 854 F.2d at 462. The district court determined that the petitioner had misrepresented the law by stating that, “in a patent case, you can appeal as of right from a holding of liability or no liability” and that “it is very common to have a trial on liability and have it go -up on appeal, if the party is going to appeal; and then after liability has been determined at the appellate level, come down for a trial on damages.” Id. at 462-63. The district court concluded that, “contrary to [petitioner’s] assertions, 28 U.S.C. § 1292(c)(2) is silent with respect to the timing of the damage phase of the trial where liability has been found” and that, pursuant to Rule 62(a), the damage phase should not be stayed unless the court in its discretion determines a stay to be desirable. Id.
Finding counsel’s broad reading of § 1292(c)(2) to be so absurd as to be sanc-tionable, the district court fined counsel for having made the argument. When reviewing the sanctions order on appeal, we examined the petitioner’s statements and determined that the statements were neither incorrect nor misleading. Id. at 463-64. We based this holding on the panel’s understanding of the Supreme Court’s decision in McCullough v. Kammerer Corp., 331 U.S. 96, 67 S.Ct. 1165, 91 L.Ed. 1365 (1947), and its determination that the purpose of § 1292(c)(2) was to “permit a stay of a damages trial.” Calmar, 854 F.2d at 464. Thus, in Colmar, we stated:
[T]here is no conflict between § 1292(c)(2) and Rule 62(a)’s grant of the discretion to stay or to proceed with the damages trial during the appeal. Indeed, in recognition of the district court’s discretion, this court has repeatedly denied, in unpublished opinions, motions to stay damages trials during appeals in patent cases.
Id. at 464. It is this language that has been repeated throughout our case law, and used, without further analysis, to justify interlocutory appeals pending a full trial on damages or a determination of willfulness.
Despite the conclusion to the contrary in Calmar, McCullough neither addressed the issue presented here nor justified the conclusion that an “accounting” is equivalent to a jury trial on damages. The patent infringement suit in McCullough was brought in equity. There, the district court had imposed the equitable remedy of an injunction, along with the accounting it was required to provide under the law at that time. Kammerer Corp. v. McCullough, 39 F.Supp. 213, 214 (S.D.Cal.1941) (stating that “plaintiffs are entitled to a permanent injunction against the defendants and an accounting”). Thus, McCullough did not involve a jury trial on patent damages. And, the Court in McCullough did not at any time suggest that a jury trial on damages is interchangeable with an accounting. Further, the panel in Cal-mar did not explain where it got its conclusion that McCullough indicated that the purpose of § 1292 was “to permit a stay of a damages trial” during the appeal of a judgment on liability, something McCullough never said or considered. Calmar, 854 F.2d at 464. Thus, it appears that McCullough does not stand for the princi- *1342 pie that § 1292(c)(2) was enacted to allow appeals when damages trials have yet to occur, and Calmar provides no basis for concluding otherwise.
Subsequent precedential case law from our court has similarly failed to address or provide any reasoning supporting the conclusion that jurisdiction arises under § 1292(c)(2) when a jury trial for damages remains. For example, in H.A. Jones Co., v. KSM Fastening Systems, Inc., 745 F.2d 630 (Fed.Cir.1984), we found we had jurisdiction when the issue of damages remained in an action finding a party in contempt of a consent decree signed several years earlier. No explanation or analysis was provided, however, regarding why damages should be treated the same as an accounting under § 1292(c)(2).[8] 745 F.2d at 631-32. Likewise, in Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552 (Fed.Cir.1984), we exercised jurisdiction over what the court described as “a judgment, final except for an accounting” where the trial on damages had been stayed, but we provided no discussion of jurisdiction and did not even cite to § 1292(c)(2). 750 F.2d at 1558.
In Majorette Toys (U.S.) Inc. v. Darda, Inc. U.S.A., 798 F.2d 1390 (Fed.Cir.1986), an interlocutory appeal was permitted pending a determination of attorney fees, but the court cited no cases except McCullough. In Johannsen v. Pay Less Drug Stores Northwest, Inc., 918 F.2d 160 (Fed. Cir.1990), we discussed Majorette and Cal-mar, but based our determination that we lacked jurisdiction under § 1292(c)(2) on the outstanding issue of liability for unfair competition. Similarly, in PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir.2007), we approvingly cited to Majorette Toys for the proposition that an appeal can be taken prior to determining damages, but ultimately found jurisdiction under § 1295, making our discussion of Majorette Toys dicta.
In Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340 (Fed.Cir.2001), drawing the distinction between the appeal of an infringement finding and that of an “exceptional case,” we stated that “ ‘[accounting,’ as used in the statute, refers to infringement damages pursuant to 35 U.S.C. § 284” as opposed to attorney fees, but cited to no authority for this interpretation. In Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C., 482 F.3d 1347, 1353 (Fed.Cir.2007), we stated that we have jurisdiction where “the district court’s infringement judgment is final as to all issues except for a determination of damages,” citing to Mendenhall v. Barber-Greene Co., 26 F.3d 1573 (Fed.Cir.1994). But the holding in Mendenhall does not relate to the interpretation of § 1292(c)(2) at issue here, and merely refers back to statements made in Calmar. 26 F.3d at 1581. Finally, in Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331 (Fed.Cir.2009), we stated that we possessed jurisdiction under 28 U.S.C. § 1292(c)(1) and (2) without citation or explanation, where a trial on damages and willfulness was stayed.
In sum, our past decisions lack any reasoned assessment of whether we have jurisdiction over appeals of judgments that are final except for a trial on damages. We should not afford such decisions undue weight in considering the issue presently before this court en banc. Saying some *1343 thing repeatedly does not make it correct for that reason alone.
For these reasons, I find none of the four points upon which the majority relies to be persuasive predicates for the court’s holding today, either singly or collectively. I do not believe these points justify the expansive reading we give to § 1292(c)(2). Patent actions in which jury trials on damages remain- pending should not be appealable to this court barring alternative procedural mechanisms to justify such appeals.[9]
IV.
The majority’s conclusion that the pen-dency of a request for a willfulness determination does not affect the finality of a court’s other rulings in. patent cases suffers the same flaws its conclusion regarding the pendency of a jury trial on damages suffers. Indeed, it is even less defensible. Rather than assess whether a finding of willfulness is an “accounting” under § 1292(c)(2), the majority again asks only whether the fact of willfulness was ever considered by special masters when assessing the appropriate measure of an award to a patent holder in a suit in equity. For reasons already explained, that is simply not the relevant inquiry. This is so for all the structural reasons I previously have discussed.
First, it violates the basic tenet that exceptions to the finality requirement are to be narrowly construed. Digital Equipment Corp., 511 U.S. at 868, 114 S.Ct. 1992 “But we have also repeatedly stated that the [collateral order doctrine is a] ‘narrow’ exception [and that it] should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of a district court error at any stage of the litigation may be ventilated.” (citing Richardson-Merrell, Inc. v. Roller, 472 U.S. 424, 436, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); United States v. Hollywood Motor Car Co., 458 U.S. 263, 270, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982)); Jones v. Nicholson, 431 F.3d 1353, 1358, n. 3 (Fed. Cir.2005) (“The Supreme Court has emphasized that the exception to the rule of finality is narrow....”); Tele-Communications, Inc. v. Comm’r, 12 F.3d 1005, 1007 (10th Cir.1993) (“The policies behind the general rule and its narrow exceptions include respect for the court, unfair surprise to the other party, and the need for finality in litigation and conservation of judicial resources.”); Way v. Reliance Ins. Co., 815 F.2d 1033, 1034 n. 4 (5th Cir.1987) (“Narrow exceptions to the finality rule do exist.” (emphasis added) (citing 9 J. Moore & B. Ward, Moore’s Federal Practice ¶¶ 110.08-110.13[12] (2d ed.1986))). The notion that Congress used a term which commonly connotes number crunching to encompass inquiries regarding the objective reasonableness of an infringer’s actions in light of the risks a patent presents and that same party’s subjective motivations, has an expansive rather than narrow reach.
Next, even if the question of whether a special master’s “consideration” of the willful character of a party’s infringement *1344 were relevant to the statutory analysis in which we engage, the majority again ignores what it was a special master had the authority to consider with regard to willfulness. While it may be true that special masters could consider issues of willfulness, and make recommendations with respect thereto, they did not have the authority to make willfulness findings — those were left to the court. Indeed, a careful review of the cases the majority cites reveals that, in none of those, did the special master make a binding willfulness finding. See Cornely v. Marckwald, 131 U.S. 159, 160, 9 S.Ct. 744, 33 L.Ed. 117 (1889) (stating that the “court” overruled objections and affirmed the special master’s report); see also Cornely v. Marckwald, 23 Blatchf. 163, 32 F. 292, 292 (C.C.S.D.N.Y.1885) (court overruling “exceptions” to the special master’s ruling); Boesch, 133 U.S. at 699, 10 S.Ct. 378 (“Exceptions were filed to [the special master’s] report, and overruled, and a final decree entered in favor of Graff and Donnell ... from which decree this appeal has been prosecuted.” (emphasis added)); Pollock v. Martin Gauge Co., 261 F. 201 (7th Cir.1919) (the decree of infringement originated from a district judge, see Martin Gauge Co. v. Pollock, 251 F. 295, 300 (D.C.Ill.1918), and was returned to said judge for an accounting); K.W. Ignition, 283 F. at 874 (stating that the special master recommended an award of punitive damages for willful infringement and that the district court overruled a portion of the recommended damages); Reed Roller Bit Co. v. Hughes Tool Co., 12 F.2d 207, 209 (5th Cir.1926) (noting that the special master recommended his willfulness finding to the district court, and the district court, “by way of punishment for willful infringement assessed the cost of auditing the books of appellants, amounting to $10,555” and entered a decree in favor in appellee). Just as the court in equity was charged with making the predicate findings necessary to a damages calculation — now left to the jury — the court in equity retained the authority and obligation to make findings regarding both whether willfulness was proven and the propriety of enhancing damages. Today, the authority to make those findings is split between the court and the jury. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 682 F.3d 1003, 1005 (Fed.Cir.2012). Nothing about those determinations — other than the final calculation of the authorized enhancement — can be considered part and parcel of the ministerial calculations involved in an accounting.
While it is true that a trial court ultimately may choose to enhance damages based on a finding that infringement has been willful, the underlying finding itself is not about numbers. It is about the objective reasonableness of the infringer’s actions in light of the risks of infringing a valid patent, and that infringer’s intent visa-vis the patentee’s rights. In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed.Cir.2007) (en banc); Bard, 682 F.3d at 1005-06. Those predicate inquiries do not impact the damages calculation unless a trial court, in its discretion, later chooses to enhance damages based upon them. Seagate, 497 F.3d at 1368 (“[A] finding of willfulness does not require an award of enhanced damages; it merely permits it.”); Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1274 (Fed.Cir.1999) (“[T]he decision to grant or deny enhanced damages remains firmly within the scope of the district court’s reasoned discretion, informed by the totality of the circumstances.”). While, at times, special masters in equity proceedings may have made recommendations regarding the question of whether to enhance damages, they had no authority to make the findings necessary to give rise to such enhancement.
*1345 The majority’s reliance on claimed efficiencies from lumping willfulness determinations into an accounting is unpersuasive, moreover. Under our case law, a determination of willfulness overlaps considerably with issues of infringement and validity. Under Seagate, we made clear that the objective risks of infringing a valid patent are “determined by the record developed in the infringement proceeding.” 497 F.3d at 1371. And, in Bard, we explained that “the threshold determination of recklessness ... entails an objective assessment of potential defenses based on the risk presented by the patent. Those defenses may include questions of infringement but also can be expected in almost every case to entail questions of validity....” 682 F.3d at 1006. In cases where indirect infringement is alleged, the overlap between willfulness and infringement is even more pronounced. In Global-Tech Appliances, Inc. v. SEB S.A., — U.S.-, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011), the Supreme Court held that “induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement,” but that this requirement of knowledge can be met when an infringer has been willfully blind to the fact that induced acts constitute infringement. 131 S.Ct. at 2068. According to the Court, “a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.” Id. at 2070-71. Thus, assessing “willful blindness” is very similar to assessing recklessness under Seagate.
Allowing an appeal of liability issues and then allowing a separate appeal of willfulness would thus require revisiting many of the same facts and issues in two separate proceedings. The cause of efficiency would not only not be served, it would be thwarted.
The fact that these two proceedings would be before two separate juries raises serious constitutional questions, moreover. See Gasoline Prods. Co. v. Champlin Ref. Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931) (A partial new trial violates the Seventh Amendment “unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.”); Witco Chem. Corp. v. Peachtree Doors, Inc., 787 F.2d 1545, 1549 (Fed.Cir.1986) (“[I]t is inappropriate, in light of the evidence presented and arguments made at this trial, to have one jury return a verdict on the validity, enforceability and contract questions while leaving the infringement questions to a second jury.”); see also Pryer v. C.O. 3 Slavic, 251 F.3d 448, 455 (3d Cir.2001) (indicating that damages and liability should be retried together when, inter alia, “there is reason to think that the verdict may represent a compromise among jurors with different views on whether defendant was liable” (citations and internal quotation marks omitted)); FIGA v. R.V.M.P. Corp., 874 F.2d 1528, 1534 (11th Cir.1989) (determining that a partial retrial of damages alone was inappropriate where evidence related to damages also “related to the alleged intent of the insured for intentionally causing [a] fire”); Stanton v. Astra Pharm. Prods., Inc., 718 F.2d 553 (3d Cir.1983) (determining that “allowing a second jury to determine the issue of damages in isolation from the whole of the circumstances surrounding the case” would result in injustice (citation and internal quotation marks omitted)). A bifurcation order which requires that two different juries visit the interwoven issues and overlapping facts involving infringement and validity on the one hand and willfulness on the other would violate the defendant’s Seventh Amendment right to a jury trial.
*1346 Again, while the majority is correct that we did not order this en banc to answer the question of whether bifurcation of willfulness questions in such a way as to assure that they be tried to separate juries raises constitutional issues, the fact that it does is not irrelevant. Although the majority feels comfortable ignoring this reality, the real questions are whether Congress would have done so, or would have had the authority to do so, in 1948. The answer to both of those inquiries must be no.[10]
I see nothing in the majority’s decision that a modern willfulness determination is encompassed within the meaning of an accounting under § 1292(c) to commend it; once more, it just cannot be correct.
V.
Absent any justification — let alone a compelling one — that a jury trial on damages or a determination of willfulness is literally an “accounting” within the meaning of § 1292(c)(2), I must dissent from the majority’s determination that we possess jurisdiction over this appeal. This matter is non-fínal and must be remanded to the district court.

. Under Rule 54(b), "[w]hen an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved,- the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.” Although it applies to multiple claims in a single action, Rule 54(b) itself provides no exemption from the rule that each of those claims be finally decided under 28 U.S.C. § 1295. See, e.g., Henrietta D. v. Giuliani, 246 F.3d 176, 181 n. 1 (2d Cir.2001) ("[Wjhere a district court is considering further relief on a claim, 'final judgment’ on the claim ordinarily may not be entered under Rule 54(b).” (citing Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 742-43, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976))).

. There is no dispute that a Rule 54(b) certification is not appropriate in the circumstances presented here.’ See Robert Bosch LLC v. Pylon Mfg. Corp., Nos. 2011-1363, -1364, Dkt. No. 25 (July 8, 2011) (conceding that the jurisdictional issue tons on § 1292(c)(2)); see also Cadleway Props, v. Ossian State Bank, 478 F.3d 767, 769 (7th Cir.2007) ("[T]he district judge has not specified who is entitled to what relief.... [A] decision that resolves a dispute about liability while leaving relief to be .determined cannot be appealed under Rule 54(b).”); Reyher v. Champion Int'l Corp., 975 F.2d 483, 487 (8th Cir.1992) ("[Wjhen the issues of liability and remedy were bifurcated for trial, Rule 54(b) did not provide a basis for an interlocutory appeal of the order entered after the first trial.”).

. See also Albert v. Trans Union Corp., 346 F.3d 734, 737 (7th Cir.2003) (statutory exceptions to final judgment rule are to be narrowly construed); Switzerland Cheese Ass’n v. E. Horne’s Mkt., Inc., 351 F.2d 552, 553 (1st Cir.1965) (statutes permitting interlocutory appeals are to be strictly construed); Florida v. United States, 285 F.2d 596, 600 (8th Cir.1960) ("statutes authorizing interlocutory appeals are to be strictly construed,” and "[cjhanges in appeal jurisdiction should be made by appropriate legislation, not by judicial modification”). But see '28 U.S.C. § 1292(e) authorizing the Supreme Court, but only the Supreme Court, to expand interlocutory jurisdiction of courts of appeals by rule.

. Admittedly, Bosch invited the court to go down this rabbit hole by arguing that ''ac-countings” never included a calculation of anything other than an infringer’s profits, as distinct from an assessment of damages; it remains an essentially irrelevant inquiry nonetheless.

. The majority is correct that we did not take this matter en banc to consider the constitutional implications of blanket bifurcation orders requiring damages to be tried to a different jury than the one that considered the liability issues in the case. That fact does not mean we can ignore those issues, however, when interpreting the jurisdictional reach of § 1292(c)(2). See Gasoline Prods. Co. v. Champlin Ref. Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931) (finding that a partial retrial of damages violated the Seventh Amendment where “the question of damages ... is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial”). We should not assume Congress ignored the possible Seventh Amendment implications of its actions when it revised § 1292(c) in 1948.

. The majority’s discussion of Dairy Queen is confounding. It begins with a mischaracteri-zation of this opinion, ends with a mischarac-terization of Wright and Miller's description of Dairy Queen, and sandwiches an incorrect reading of Dairy Queen in between. While who the decision maker is in an accounting is relevant to the inquiry, the relevant inquiry is one that asks whether the procedure that is an accounting is the same as the procedure that is a jury trial on damages. The Supreme Court not only did not equate the two in Daily Queen, it emphasized the difference between the two; it simply found the right to the latter to be too important to be lost by sloppy references to the former. What it said is "[t]he respondents’ contention that this money claim is 'purely equitable’ is based primarily upon the fact that their complaint is cast in terms of an 'accounting,' rather than in terms of an action for ‘debt’ or ‘damages.’ But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.” Dairy Queen, 369 U.S. at 477-78, 82 S.Ct. 894. Consistent with this reading of Dairy Queen, Wright and Miller note ''[l]abeling the claim as one for an accounting also does not defeat the right to a jury.” 9 Charles Alan Wright & Arthur R. Miller, 9 Federal Practice and Procedure: Civil § 2312, at 165 (3d ed.2008). If either the Supreme Court or Wright and Miller believed — as does the majority — that the procedure that is an accounting is the same as the procedure that is a jury trial, one would think they would have said so, thereby avoiding any need to be concerned with "labeling” or word "choices” in pleadings. Rather than support the majority’s strained reading of the term *1339 accounting, the authorities to which it cites suggest the contrary.

. Notably, the complexities involved in trying damages issues in patent cases are no different from those entailed in other complex civil actions. Antitrust cases, those involving securities fraud, and even those concerning multilayer insurance claims are just a few examples of actions where damages presentations to juries must be both sophisticated and *1340 lengthy. No one would presume to exempt those cases from the normal rules governing actions in Article III courts based on that reality. We should not exempt patent cases from those rules either, in the absence of a clear congressional intention to do so.

. The decision in H.A. Jones is actually reconcilable with a correct reading of § 1292(c)(2) if we assume the court's reference to “damages” there simply involved the application of a previously determined royalty rate to new sales, as to which the earlier infringement finding applied — i.e., what remained was a simple "accounting,” and no determination regarding the right to, type, or scope of damages remained.

. See, e.g., 28 U.S.C. § 1292(a)(1) (granting jurisdiction to courts of appeals over appeals from "[(Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolvé or modify injunctions, except where a direct review may be had in the Supreme Court”); Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1300 (Fed.Cir.2005) (“Section 1292(a)(1) provides that the court of appeals has jurisdiction over appeals from interlocutory orders ‘granting, continuing, modifying, refusing or dissolving injunction, or refusing to dissolve or modify injunctions.’ ”).

. The majority cites to Voda v. Cordis Corp., 536 F.3d 1311, 1329 (Fed.Cir.2008), for the proposition that sending the willfulness determination to a different jury than the one that assessed validity and infringement does not violate the Seventh Amendment. The entirety of the constitutional analysis in Voda is set out in one sentence: “Additionally, we reject Cor-dis’s argument that, under the Seventh Amendment, a new trial on willfulness would require a new trial on infringement.” Voda, 536 F.3d at 1329. There is no citation to the Supreme Court's decision in Gasoline Products, to our own earlier decision in Witco endorsing and following the principles of Gasoline Products, or to the myriad cases from the regional circuits doing the same. To the extent Voda purported to answer the Seventh Amendment question for all cases and in all circumstances in that one sentence, as the majority implies, it should be revisited. The question of whether issues are sufficiently separable and distinct to permit trial to different juries is to be determined on a case by case basis considering the totality of circumstances. See Witco Chem. Corp., 787 F.2d at 1549, and cases collected therein (determining that a partial new trial is inappropriate “after considering the totality of the circumstances”). Where the circumstances confirm that the issues to be addressed in the separate trials are as interwoven as they are whenever willful infringement allegations are bifurcated, a separate trial of that claim alone would rarely, if ever, pass constitutional muster under such an analysis.